THORNAL, Justice.
Appellant Central Bank and Trust Company, which was plaintiff below, seeks reversal of numerous summary final decrees in favor of certain appellees, who were defendants below, in a proceeding instituted by appellant as a creditor’s bill.
The determining point is whether there existed a genuine material issue to preclude the entry of the summary decrees.
Appellant Central Bank and Trust Company, hereafter referred to as Central, over a period of time advanced various sums of money to Florida Carolina Lumber Company, hereafter referred to as Florida Carolina. The loans were secured by the note of Florida Carolina guaranteed by appellees P. J. Davis and Blanche Davis, his wife, together with an assignment of an account receivable in favor of Florida Carolina •against Rose Saxon Lumber Company. There was a default in the note as well as in the payment of the account receivable. ■Central filed suit and on August 27, 1956, recovered a judgment against Florida Carolina and the two Davises.
During the course of its operation Florida 'Carolina had obtained financing from the three appellee-banks, to-wit, Dania Bank, Bank of Miami Beach, and Pan American Bank of Miami. In order to obtain such financing Florida Carolina would order a shipment of lumber. Accompanying the shipment would be a sight draft with a bill of lading attached. On receipt of the sight draft the bank involved would advance the funds to meet the draft and hold the bill of lading as security. On arrival of the lumber in Miami, Florida Carolina would obtain the bill of lading from the bank under a trust receipt. When the lumber was unloaded it would be placed under a warehousing arrangement with Lawrence Warehousing Company, which would in turn issue warehouse receipts for the lumber. These warehouse receipts would then be delivered to the lending bank and substituted in lieu of the trust receipts.
The effect of this transaction with the three appellee-banks obviously was to give them a lien or charge against the lumber for the various amounts advanced by them for the purchase of the lumber. In June, 1956, due to deterioration of lumber, wastage and other causes the three ap-pellee-banks were notified that there was not sufficient lumber in the warehouse to meet the obligations which they held against it. The banks became dissatisfied with the management of Florida Carolina and threatened suit.
In order to forestall the filing of suit, the appellees P. J. Davis, Charles H. Al-cock and Clarence E. Hood, Jr., who owned all of the stock of Florida Carolina, resigned as officers and directors of Florida Carolina and placed all of their stock with a board of trustees selected by the three appellee-banks. These same three individuals owned all of the outstanding stock of Southern Creosoted Lumber Co., Inc., a separate corporation. They likewise agreed to establish a voting trust of their stock in Southern and at the same time Southern executed a mortgage on certain of its property in Hillsborough County and guaranteed the obligations of Florida Carolina to the three appellee-banks. These trust agreements and other security instruments were executed on or about June 30, 1956, approximately two months before the recovery of appellant’s judgment.
It will be noted that appellant had a judgment against Florida Carolina and *602 against P. J. Davis and wife. It had no judgment against Southern Creosoted Lumber Co. or against any of the other appellees. The appellees Morales, Lieb-man and Robinson were the three trustees designated by the three appellee-banks to exercise the voting rights of the stock in Florida Carolina and Southern Creosoted which had been provided by the several voting trust agreements. When the trust agreements were executed, Florida Carolina was obviously in difficult financial straits. Its entire supply of lumber was encumbered by the warehouse receipts held by the three appellee-banks. All of its other assets were encumbered by a mortgage in favor of one Apte, who is not a party to this suit.
Appellant Central after recovery of its judgment instituted proceedings supplementary to execution. Before such proceedings were terminated appellant then filed its bill in equity contending that the transactions between Florida Carolina, Southern Creosoted and the three owners of all of the stock in each of the corporations constituted a fraud against its rights as a creditor. The complaint prayed that all of the voting trust agreements be set aside, that Southern Creosoted be declared a wholly owned subsidiary of Florida Carolina and that the assets of these corporations be made available at least pro tanto to the liquidation of appellant’s judgment.
After filing their several answers, ap-pellees Bank of Miami Beach, Pan American Bank and Dania Baplc, together with Hood, Alcock, Morales, Liebman and Robinson, as well as the corporate appellee Southern Creosoted, all moved for summary decrees. They supported their motions with various depositions taken during the proceedings supplementary to execution. They also filed supporting affidavits. The sum of the depositions and affidavits was simply that Southern Creosoted was a perfectly solvent corporation, that it was not a wholly owned subsidiary of Florida Carolina, that the voting trust agreements were made in good faith merely to enable the three appellee-banks to liquidate the security against which they already held first liens in an amount greater than the value of the security, to-wit, the lumber in the warehouse, and that the liquidation did not produce enough to pay off the claims of these three banks.
Appellant Central filed no counter affidavits whatever but relied merely on its verified complaint to establish what it claimed was a genuine factual issue. The trial judge entered summary decrees-in favor of all of the movants and as to them dismissed the complaint. The complaint, of course, remained standing against P. J. Davis and wife. The judge also entered summary decree in favor of Miami Beach First National Bank, which apparently had attempted to intervene in the cause but had no further interest after the entry of the summary decrees now under attack. Appellant seeks reversal of the various summary decrees above described.
It is contended by the appellant that the verified complaint adequately alleged a fraudulent transaction that justified the intervention of a court of equity and established a factual issue to be resolved only after a full hearing.
It is the contention of the various ap-pellees that the depositions and supporting affidavits filed with their motions for summary decrees eliminated the existence of a genuine material factual issue.
Appellant insists that its position is-supported by a reference to Section 726.01, Florida Statutes, F.S.A., condemning fraudulent conveyances and Section 608.55, Florida Statutes, F.S.A., prohibiting transfers of its assets by corporations after or in contemplation of insolvency.
It becomes important to bear in mind that the sole assets of Florida Carolina which were placed at the disposal of the three appellee-banks were assets which were *603 heavily encumbered to the full extent of their value by the liens in favor of the banks, evidenced by the warehouse receipts. In other words, the transfers so far as the affidavits and depositions reveal ■did not place beyond the reach of the appellant-bank any assets which otherwise would have been subject to its claim. The affidavits and depositions supporting the motions for summary decrees sustain the conclusion of the Chancellor that the voting trust agreements were executed in good faith and for a valuable consideration, to-wit, the liquidation of the antecedent debt, and did not result in placing beyond the reach of the appellant any assets that it otherwise could have subjected to its judgment lien. The transaction merely set up an orderly arrangement for the liquidation of assets against which the three appellee-banks already held liens for an amount which exceeded the value of the transferred assets.
The situation is somewhat analogous to that which confronted us in Middleton v. Plantation Homes, Inc., Fla.1954, 71 So. 2d 503. We there held in substance that where a corporation in financial difficulties merely exchanges one security for another of equal value in favor of a secured creditor, it would not be considered as doing violence to what is now Section 608.55, Florida Statutes, F.S.A., which was then cited as Section 612.45, Florida Statutes.
As to the contention that Southern Creosoted was a wholly owned subsidiary of Florida Carolina, the allegations of the complaint itself excluded the possibility of establishing this aspect of the appellant’s position. The complaint shows on its face that all of the stock in Southern Creosoted was owned individually by the appellees Davis, Hood and Alcock. There is no showing whatever that any of the stock in Southern Creosoted was owned or controlled by Florida Carolina.
We think it well to point out further that the appellant submitted no counter affidavits or counter depositions to meet the depositions and affidavits filed by the’ appellees in support of their position. It is true that the complaint was verified. We are requested to consider the allegations of the sworn complaint as being sufficient to meet the factual assertions of the affidavits and depositions.
We have held in Booth v. Board of Public Instruction, Fla.1953, 67 So.2d 690, that a specific factual allegation of a verified complaint will be considered in determining whether there exists a material factual issue on a motion for summary decree. We think this view is sustained by a reference to Rule 1.36(c), Florida Rules of Civil Procedure, 30 F.S.A., wherein it is provided that the summary decree shall be rendered “if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact * * However, we have the view that the rule which we have announced should be applied in the light of the requirements of Rule 1.36(e), Florida Rules of Civil Procedure, governing supporting and opposing affidavits as related to a motion for a summary decree. In that section of the Rule last cited it is required that the affidavit be made on personal knowledge and shall set forth facts admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.
Our holding therefore is that the allegations of a sworn complaint will be considered as against a motion for summary decree with supporting affidavits only if the allegations of the sworn complaint meet the requirements of an affidavit under Rule 1.36(e), Florida Rules of Civil Procedure. For a complete discussion of this subject see Moore’s Federal Practice, Vol. 6, p. 2063; and Federal Practice and Procedure by Barron and Holtzoff, Sec. 1235.
In the case at bar the allegations of the complaint constituted mere generalizations as to claims of fraud and did not meet the requirements of a counter affidavit within the contemplation of Rule 1.36, Florida *604 Rules of Civil Procedure. In other words, when the Chancellor took into consideration the allegations of the complaint as against the specific factual statements in the depositions and affidavits there was nothing in the complaint to form an issue on the factual matters set forth in the depositions and affidavits. Hence, it was proper to enter the summary decrees.
The decrees under attack are affirmed.
TERRELL, C. J., and THOMAS, DREW and O’CONNELL, JJ., concur.