Robert E. PINE, Appellant,

v.

GIBRALTAR SAVINGS ASSOCIATION, Appellee.

No. 15239.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 25, 1968.

Strickland, Gordon & Sheinfeld, Gerald S. Gordon Houston, for appellant.

Monteith, Baring & Monteith, Charles E. Williams Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellee granting it recovery on the balance due on three promissory notes plus accrued interest and attorney's fees of 10% of the principal

and interest as provided in the notes. The total amount of the judgment was $35,318.-30. This represented the total of the deficiencies on the notes after foreclosure by a substitute trustee on property covered by deeds of trust given to secure the notes. The judgment also denied appellant recovery on his counterclaim for damages for breach of contract, the amount asked for being $450,000.00.

Appellee's Original Petition was filed February 1, 1967. It very precisely alleged the execution on April 18, 1964, of a note for $87,000.00; alleged its terms; attached a photographic copy and expressly made the copy a part thereof. The deed of trust given to secure the note was alleged and a photographic copy of it was attached to and made a part of the petition. There is then alleged that default was made in payment of the note, and there was a trustee's sale of the property on December 6, 1966. A balance of $9,044.10 was alleged to be due and owing after the sale and that all just and lawful credits, offsets and payments had been allowed.

The petition then set up the note of November 17, 1964 in the amount of $217,-665.00, the deed of trust securing it, default in payment, the trustee's sale of the property on December 6 and the balance due after sale in the amount of $20,760.66. Too, there were the allegations that all just and lawful credits, offsets and payments had been allowed. Photographic copies of each instrument were attached to and made a part of the petition.

What we have said about the above two notes is also in all respects true of the third note dated January 4, 1965, in the amount of $47,800.00, except a balance of $2,392.54 was alleged to be owing after the trustee's sale.

While appellant's original answer does not appear in the transcript, appellee's motion for summary judgment which was filed March 10, 1967, recites appellant had filed an answer. A statement in appellee's brief asserts it consisted of a general denial.

Appellee filed its unsworn motion for summary judgment based on its pleadings, appellant's answer, a supporting affidavit, and the original trustee's resignation and the instruments appointing a substitute trustee, photographic copies of which instruments were attached. Also attached, though not referred to in the motion itself, were photographic copies of the notices of sale posted by the substitute trustee. The affidavit of Charles E. Williams recites that he adopted all statements, allegations and facts set out in appellee's Original Petition and he "knows of his own knowledge they are true and correct." He further swears to facts which show the validity of the sales by him as trustee. In fact, at this point appellee would have been undoubtedly entitled to judgment as prayed for.

Hearing on the motion was set for April 10. On April 7 appellant filed his First Amended Answer which is not sworn to, the substance of which was that appellant was not indebted to appellee because appellee breached various development contracts for the orderly development of Glenwood Bayou Subdivision and such breach resulted in damage to him in excess of the amount sued for by appellee, as would be shown in appellant's cross-action which was being filed.

In the petition setting up the cross-action it is stated that prior to and after April 21, 1964, appellant entered into a development program for the construction of homes and single family dwellings on acreage in Brazoria County, some of which was owned by him and some of which was to be acquired by him. The development program was alleged to include (1) basic subdivision loan, (2) interim construction loans for the construction of single family residences, and (3) term mortgage loans to purchasers of such single family dwellings, based on a percentage of an appraised value of the real property and improvements thereon, sold by appellant and purchased by qualified purchasers under the terms of the loan program. The loan and development pro-

gram referred to up to this point was that contemplated by the Federal Home Loan Bank Board that could be financed by financial institutions such as appellee.

After recital of the above, appellant alleged that on *April 17, 1964, appellee issued its written loan commitment to appellant* (emphasis ours unless otherwise indicated) in the amount of $217,665.00, to be secured by a first lien on 108 lots in the subdivision and the water and sewer *plant,* for a period of not to exceed three years, for which appellant paid appellee a 2% earned commitment fee, requiring appellant to commence construction of at least ten residences within six months and to complete residences on all lots within three years. Further it was alleged the commitment permitted partial releases of the basic lien upon the payment of 70% of the appraised value of each lot, plus accrued interest. Appellant then alleged that based upon "the loan commitment dated April 17, 1963 (probably meaning 1964) appellant at his own cost and expense proceeded to develop the subdivision" and on November 17, 1964, borrowed "under the terms of such loan commitment" the sum of $217,665.00 and mortgaged various improved properties and two additional parts of reserve property on which the water and sewer *plant* had been constructed. Appellant asserted he submitted twenty interim loan requests but appellee approved only four. Too, he alleged that on completion of these four houses he contracted to sell them to persons who qualified as purchasers but appellee refused to approve loans to the prospective purchasers so appellant could not sell the homes. Appellant further alleged refusal by appellee to approve plans for additional single family dwellings or to make interim construction loans.

Appellant then alleges a breach by appellee of its various agreements in that appellee failed and refused to (1) advance interim construction funds for houses to be erected in order for appellant to comply with the terms of appellee's loan commitment, and (2) appellee failed to make

term amortized loans to purchasers of erected homes, so that the subdivision could be developed orderly in strict compliance with the terms of appellee's loan commitment.

We feel the above allegations of fact assert that appellee executed its written loan commitment obligating it to make interim construction loans for individual houses and then to finance the purchasers of the homes constructed by appellant, and that it breached such agreement in these respects.

We have not noticed the allegations of appellant with regard to the failure or refusal of appellee to comply with requirements of the Veterans Administration so it would make available home loans for purchases by veterans because we nowhere find in the cross-petition an allegation of any obligation on the part of appellee under any agreement with appellant to do so.

Appellant alleges foreclosure under the deeds of trust on December 6, 1966, after appellee had agreed on November 1 to extend foreclosure for thirty days. Notice of the trustee's sale to be held on December 6 would have to be posted by November 14. Appellant alleges the sale was, therefore, a violation of the agreement of November 1. He then alleges that immediately after the sale appellee converted to its use the *water and sewer collection system* which had *never been subject to any lien of appellee.* There is the allegation that at the time of foreclosure the *water and sewer collection system* was reasonably worth $125,000.00. Appellant then alleged that the land mortgaged and foreclosed on had, at the time of the deeds of trust to appellee, been mortgaged for not more than $125.00 per acre but that it was worth more than $1,000.00 per acre. Further it was alleged that because of "the actions and activities" of appellee, appellee converted the *water and sewer collection system* to appellant's damage in the amount of $450,000.00 and that as a result of appellee's action in failing to comply with

its development program and because of the foreclosure, appellant lost the value of the equity in his property in the amount of $325,000.00.

Prayer is for recovery of damages in the amount of $450,000.00. There is also a general prayer for relief.

Appellant then swore as follows: "My name is Robert E. Pine. I am Cross-Plaintiff in the foregoing cross-action against Gibraltar Savings Association. I have carefully read the allegations therein set out, and I state that all allegations of fact therein contained are true and correct."

Attached to the cross-petition is a copy of the plat of the subdivision. The cross-petition asserts there was never "formal dedication of such property as a subdivision" but lots were sold by making reference to the plat. An examination of the plat shows streets and also shows a five-foot utility easement across the rear of each lot.

Nowhere in his pleadings does appellant ask that the trustee's sales be set aside.

After the filing of the cross-action appellee procured additional affidavits, the purpose of which was to refute the sworn allegations in appellant's cross-action. Also attached to one of the affidavits is a letter from Mr. Joe Reynolds, an attorney, addressed to Mr. Lallinger who was apparently employed by appellee. The letter deals with appellant's delinquency to appellee and requests time to make the payments current. It is dated October 31, 1966, and expresses the thought that this could be done within sixty days, but it is also stated appellant was going to try to get it done in thirty days.

An affidavit from Glenda E. Cox, secretary to Mr. Reynolds, states that she talked with Mr. Cowden (Mr. Reynolds was out of Houston) of Gibraltar Savings on November 1, 1966, and Mr. Cowden told her appellee would give appellant thirty days to make the payments current, but if this was not done the property standing as security would be sold by the trustee on

December 6, 1966. An affidavit of Mr. Cowden stated he instructed the trustee on October 6, 1966, to foreclose on the first Tuesday of November, 1966. He then confirms the facts stated in the affidavit of Glenda E. Cox. He then states he instructed the trustee not to proceed with the sale scheduled for November, but to take steps necessary for sale on December 6 and to sell on that date if appellant failed to satisfy the delinquency on the loans by that date.

Another affidavit by Mr. Cowden specifically denies that appellee at any time entered into any written agreement with or issued any commitment to appellant to make interim construction loans, except the four which appellant admits receiving. The affiant further denies in the affidavit that appellee entered into any agreement or issued any commitment to make permanent loans to purchasers of homes.

On May 8, 1967, the trial court entered its interlocutory order in favor of appellee in its suit on the three notes. On June 5, 1967, said court rendered judgment in favor of appellee that appellant take nothing on his cross-action and made final the above interlocutory order in appellee's favor.

Appellant here takes the position that his *sworn* cross-action raised material issues of fact and it was, therefore, error to render a summary judgment against him. The issues that he says are raised are the existence of a written contract under the terms of which appellee was obligated to furnish interim construction loans for the construction of homes and the making of permanent loans to purchasers of the homes. He also asserts a breach of these two contractual obligations resulted in his inability to build the homes and sell them and thus obtain funds to pay the notes. He asserts the resulting foreclosure deprived him of the value of his land. Further, he asserts there was a conversion of the water and sewer collection system that was not covered by the deeds of trust.

Appellee's position is that it presented not merely pleading, but affidavits and the

extrinsic evidence we have above detailed, which not only established its cause of action as a matter of law, but also they, as a matter of law, show that appellant was not entitled to recover on the cross-action, because the allegations in the cross-action were merely a pleading of facts that were overcome by its supporting affidavits and other extrinsic evidence. Appellee says the fact that the cross-action was sworn too does not suffice to raise a fact issue.

■ The burden, in a summary judgment proceeding, is on the movant to establish that there is no dispute concerning the existence of any material fact. Every doubt as to the existence of a fact is resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

■■ With regard to appellee's motion for summary judgment on the balance owing on the three notes plus interest and attorney's fees, we are of the view that the trial court correctly rendered the interlocutory judgment. Appellant, as shown above, had only an unsworn general denial in his answer and an unsworn statement that, as would be shown in his cross-action, which turned out to be a suit for damages for conversion and breach of contract, he had been damaged in an amount greater than the amount sued for by appellee. By the affidavits and documentary evidence, which we have detailed above, appellee established its cause of action. The only real point made here is that there was a fact issue as to the reasonableness of the attorney's fee. Each note expressly provided for an attorney's fee of 10% of the principal and interest due if it was placed in an attorney's hands for collection. Nowhere in pleading or affidavit below did appellant attack its reasonableness. Therefore, the contractual provision of 10% shown by proper documentary evidence is binding and establishes its reasonableness. Amuny v. Seaboard Bank & Trust Co., 23 S.W.2d 287 (Tex.Com.App.); Fisher v. Howard, Tex.Civ.App., 389 S.W.2d 482, n. w. h.

■ With regard to the action of the trial court in granting appellee's motion for summary judgment that appellant take nothing, we are of the view that there was error because material fact issues were raised.

We purposely detailed the statements of the allegations in appellant's sworn cross-action because of appellee's contention that though sworn to it did not suffice as an affidavit, but that appellant should have responded to appellee's affidavits and extrinsic evidence by separate affidavits or properly proven extrinsic evidence. Too, so frequently, pleadings contain pure conclusions as distinguished from allegations of fact that swearing to them does not affirm facts.

■ We fail to see why a pleading which alleges facts and which is sworn in a manner that affirms under oath the truth of the facts alleged does not amount to an affidavit. See discussion in Mc-Donald, Texas Civil Practice, Cumulative Supplement, Sec. 17.26.3(iv), p. 55, and authorities there cited and discussed. See also Burkett v. Cluck Grain Co., Tex. Civ.App., 266 S.W.2d 425, n. w. h.; Dickinson & Co. v. Mellos Peanut Co. of Illinois, 179 F.2d 265 (7th Cir.).

■ Here we feel the sworn cross-action sufficed as an affidavit and when so considered raised fact issues. Appellee's extrinsic evidence and affidavits did not disprove the existence of all the material facts alleged. We do think the appellee established as a matter of law that the 30 day delay in foreclosure that had been promised was given. However, appellant under oath alleged a written loan commitment that obligated appellee as above specified. If appellee had not denied such under oath, appellant on a trial on the merits would not have had to prove its execution. Appellee under oath denied the execution of any written agreement. This merely raised a fact issue as to the existence of the agreement. See Rule 93(h), Texas Rules of Civil

Procedure. In a conventional trial on the merits appellant will be under the burden of proving it. On summary judgment, however, a mere denial under oath by appellee does not have the effect of establishing it does not exist.

In the sworn cross-action there is an allegation that the *water and sewer collection system* was not covered by any deed of trust, but since the foreclosures, above detailed, appellee has been using it and has converted it to its own use. We find no affidavit denying this allegation. A reading of the deeds of trust does not disclose the falsity of the allegation that such system was not covered by any deed of trust.

The judgment of the Trial Court is reversed and remanded. In the Trial Court the interlocutory summary judgment will remain in effect as an interlocutory order pending final disposition of appellant's cross-action.