**LAIDLAW WASTE SYSTEMS (DALLAS), INC.,**
Petitioner

v.

**CITY OF WILMER, Texas, Respondent.**

No. 94–0566.

Supreme Court of Texas.

Argued Feb. 8, 1995.

Decided June 29, 1995.

Rehearing Overruled Sept. 14, 1995.

Kerry N. Cammack, Scott R. Kidd, C. Brian Cassidy, and Douglas W. Alexander, Austin, for petitioner.

Henry W. Fielder and J. Patrick Atkins, Waco, for respondent.

OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, HECHT, GAMMAGE, ENOCH and SPECTOR, Justices, join.

In this case we must determine whether a Type A general-law municipality may annex a contiguous area pursuant to section 43.024 of the Local Government Code, when the annexation causes it to exceed the statutory area limitations that were applicable when it initially incorporated under section 6.001 of the Code. Laidlaw Waste Systems (Dallas), Inc. brought suit to void the annexation of its property by the City of Wilmer, Texas, a Type A municipality.[1] The trial court rendered summary judgment in favor of Laidlaw. The court of appeals reversed. 890 S.W.2d 459. Because we conclude that section 43.024 authorizes such an annexation, we affirm the judgment of the court of appeals.

I

In 1990, Laidlaw received a permit to construct and operate a municipal solid waste landfill on property adjacent to Wilmer. The City subsequently annexed approximately 205 acres of land in its extraterritorial jurisdiction, including a portion of the site of the proposed landfill. The temporary zoning designation for the annexed land does not include operation of a landfill as a permissible use. Laidlaw initiated a declaratory judgment action, challenging the validity of the annexation on several fronts.

---

1. ECO Land, Inc. was also a plaintiff in the trial court and an appellee in the court of appeals. ECO did not file an application for writ of error in this Court and has not joined in Laidlaw's application.

Laidlaw filed a motion for summary judgment on a single ground, asserting that the annexation was void and invalid under section 5.901(2) of the Texas Local Government Code because a Type A municipality of Wilmer's size was precluded from having a surface area in excess of four miles, and that the surface area of Wilmer already exceeded that limit. The City filed its own motion for summary judgment, attempting to negate this and the other allegations in Laidlaw's petition. The City's motion asserted that Laidlaw lacked standing to challenge the annexation; that the area limitations in section 5.901(2) applied only to the incorporation of a municipality, not to annexation; that the area annexed did not exceed the one-half mile limitation in section 43.024(a) of the Code; and that the metes and bounds description of the annexed territory did close, contrary to Laidlaw's assertions.

The trial court denied the City's motion and granted Laidlaw's motion for summary judgment, declaring the annexation void. The court of appeals reversed and rendered judgment in favor of the City. 890 S.W.2d 459.

## II

■ The first question we must resolve is whether Laidlaw has standing to challenge the annexation. Generally a quo warranto proceeding is the only appropriate mechanism for challenging the validity of an annexation. *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 436 (Tex.1991). The City contends that as a private party, Laidlaw lacks standing. However, a private party may collaterally attack an annexation that exceeds the annexation authority granted by statute. *See id.* at 436–38. Laidlaw's argument is that the City's attempted annexation is wholly void because it exceeds the statutory area limitations. Laidlaw does have standing to attack the annexation on this ground. However, Laidlaw has no standing to challenge the annexation on procedural grounds, such as alleged failures to meet the notice and signature requirements, and accordingly, we do not consider those procedural challenges.

## III

■ In resolving this case, it is crucial to understand the different classifications of municipalities in the Local Government Code. Municipalities in Texas may be divided into three broad categories: general-law, special-law, and home rule. Laws expressly applicable to one category are not applicable to others. *See Forwood v. City of Taylor,* 147 Tex. 161, 214 S.W.2d 282, 285 (1948). The Local Government Code further subdivides general-law municipalities into three types: A, B, and C. *See* TEX.LOCAL GOV'T CODE §§ 5.001–5.003. These classifications preserve distinctions established in the predecessor statutes enacted in the late nineteenth and early twentieth centuries. *See* former TEX.REV.CIV.STAT.ANN. art. 961 (1875) (repealed 1987), art. 1133 (1897) (repealed 1987), and art. 1154 (1909) (repealed 1987). Communities with 600 or more inhabitants may incorporate as Type A municipalities. TEX.LOCAL GOV'T CODE § 6.001. Communities with more than 200 but less than 10,000 inhabitants may incorporate as Type B municipalities. TEX.LOCAL GOV'T CODE § 7.001. Communities with more than 200 but less than 5,000 inhabitants that adopt a commission form of government may incorporate as Type C municipalities. TEX.LOCAL GOV'T CODE § 8.001.

■ Section 5.901 of the Local Government Code, which applies to all general-law municipalities, provides that "[a] community may not incorporate as a general-law municipality unless it meets the following territorial requirements: ... a community with 2,001 to 4,999 inhabitants must have not more than four square miles of surface area...." TEX.LOCAL GOV'T CODE § 5.901. It is undisputed that this would prohibit a municipality with fewer than 5,000 inhabitants from incorporating within an area of more than four square miles. The dispute in this case arises from the application of these territorial limits to subsequent annexations.

For Type B municipalities, the application is clear. Section 43.025 of the Local Government Code, which governs annexations by Type B municipalities, provides that "[t]he municipality may not be enlarged under this section to exceed the area requirements es-

tablished by Section 5.901." TEX.LOCAL GOV'T CODE § 43.025(d). Subsection (d) specifically incorporates the territorial limits of section 5.901. There is no parallel provision in section 43.024, which governs Type A municipalities. The only territorial requirement in section 43.024 is that the annexed area be less than one-half mile in width, which has no counterpart in section 43.025. In fact, section 43.025(d) is the *only* annexation provision that refers to the limits in section 5.901, and it is applicable only to Type B municipalities. This is entirely consistent with the predecessors of sections 43.024 and 43.025. A Type B municipality (referred to as a town or village under the older statutes) was restricted to its original incorporated limits in annexing contiguous area. *See* former TEX. REV.CIV.STAT.ANN. art. 1135 (1903) (repealed 1987) and art. 971 (1895) (repealed 1987). A Type A municipality (referred to as a city or town in the older statutes) was not so restricted. *See* former TEX.REV.CIV.STAT.ANN. art. 974 (1875) (repealed 1987).

■ In *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981), we held:

> It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.

*Id.* at 540 (citations omitted). Laidlaw's construction of the statute in this case violates both of these basic precepts. If, as Laidlaw argues, the territorial limits in section 5.901 apply automatically to any annexation by a general-law municipality, section 43.025(d) is entirely superfluous. By the same token, Laidlaw's construction assumes that the territorial limits were excluded from section 43.024 for no purpose. When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded. *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex. 1980). This principle is related to a more general rule that courts should not insert words in a statute except to give effect to clear legislative intent. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex.1981). In this case, there is no clear legislative intent to apply territorial limits to annexations by Type A municipalities.

On the contrary, an examination of the statute as a whole reveals that the Legislature frequently treats Type A municipalities differently from Type B municipalities. *See, e.g.,* TEX.LOC.GOV'T CODE §§ 315.005 (Type A municipalities may operate free libraries); 341.001 (Type A municipalities may establish police forces); 341.021(e) (marshal of Type A municipality has same power as sheriff); 341.902 (Type A municipalities may build houses of correction); 342.001 (fire protection provisions apply only to Type A municipalities); 402.015 (Type A municipalities may provide municipal water supply system). In light of these statutory distinctions, we would not be justified in assuming that the Legislature intended to apply the same rules to Type A and Type B municipalities.

Laidlaw relies on lower court opinions in *City of Northlake v. East Justin Joint Venture and Sentry Environmental,* 873 S.W.2d 413 (Tex.App.—Fort Worth 1994, writ denied) and *City of Deer Park v. State ex rel. Shell Oil Co.,* 259 S.W.2d 284 (Tex.Civ. App.—Waco 1953), *aff'd on other grounds,* 154 Tex. 174, 275 S.W.2d 77 (1955). In *Deer Park,* the court of appeals concluded that the city was governed by the limits applicable to Type B municipalities. The court went on to note in dicta that the territorial limits would also apply to a Type A municipality. The court of appeals reasoned that allowing unlimited annexation would render the territorial limits "vain, futile and meaningless." *Deer Park,* 259 S.W.2d at 287. In reviewing *Deer Park,* our Court expressly declined to reach the issue of whether the territorial limits apply to annexation by a Type A municipality. *Deer Park,* 275 S.W.2d at 82.

Moreover, the *Deer Park* analysis is flawed in assuming that annexation would be unlimited in the absence of territorial restrictions. Section 43.024 itself limits any given annexation to an area "one-half mile or less in width" and contiguous to the municipality. TEX.LOC. GOV'T CODE § 43.024(a). In this respect, section 43.024 is similar to sections 43.023 and 43.028, which limit the size of the area annexed but do not refer to the territorial restrictions in section 5.901. Further,

the Legislature has imposed additional limitations on annexation since *Deer Park* was decided. Section 43.055 limits the total surface area that a municipality may annex in a calendar year. (The municipality cannot annex in excess of ten percent of its area as of January 1 of that year, plus any area carried over, as provided in that section.) Section 43.051, which applies to all municipalities, provides that a municipality may annex only land that it owns or that is within its extraterritorial jurisdiction. Extraterritorial jurisdiction is a function of population. § 42.021. For example, a municipality with fewer than 5,000 inhabitants would have only one-half mile of extraterritorial jurisdiction. § 42.021(1). In light of these statutory restrictions, the fear of unfettered annexation in *Deer Park* is somewhat overstated.

*Northlake* involved similar facts. As in *Deer Park*, the court of appeals first concluded that Northlake was a Type B municipality, but went on to hold that the territorial limits would apply to a Type A municipality as well. *Northlake*, 873 S.W.2d at 419. The court explained the absence of a territorial restriction in section 43.024 by pointing out that the predecessor to section 43.024 was adopted before territorial limitations applicable upon incorporation were enacted in 1895. *Id.* If this reasoning were valid, the other annexation provisions adopted after 1895 should contain language similar to that of subsection (d) of section 43.025. Sections 43.023 (annexation by a municipality with a population of more than 5,000), 43.028 (annexation of certain sparsely populated areas) and 43.029 (annexation of unoccupied areas on petition of the school board), all adopted after 1895, contain no references to the territorial limits.

Neither *Deer Park* nor *Northlake* offers a convincing rationale for disregarding the language of the statute. Under the terms of section 43.024, the City of Wilmer may annex land without reference to the territorial limits imposed in section 5.901.

## IV.

■ Laidlaw also argues that the court of appeals erred in *rendering* judgment for the City. Specifically, Laidlaw contends that it raised fact issues as to (1) whether the metes and bounds description of the annexed property was proper, (2) whether the annexed property exceeded one-half mile in width, and (3) whether the City complied with the Open Meetings Act. With respect to the first two issues, Laidlaw did have standing as a private party to challenge the annexation. *See Alexander Oil*, 825 S.W.2d at 438 (private party has standing when annexation exceeds statutory limitations or description of property does not close). As to the third issue, Laidlaw argues that the Open Meetings Act confers standing upon any interested person to prevent or undo governmental action that does not comply with the Act. *See* TEX.GOV'T CODE § 551.142. Assuming without deciding that Laidlaw had standing to challenge the annexation under the Open Meetings Act, Laidlaw's summary judgment evidence failed to raise a fact issue as to any of the issues.

In its motion for summary judgment, the City presented evidence that its metes and bounds description was proper, that the annexed property was less than one-half mile in width, and that it complied with the Open Meetings Act. As a part of its response to the City's motion, Laidlaw attached a copy of its verified original petition. Laidlaw asserts that the specific facts set out in its petition that are verified by two sworn statements are competent summary judgment evidence.

■ Generally, pleadings are not competent evidence, even if sworn or verified. *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex.1971). In *Hidalgo*, we recognized that some jurisdictions and at least one commentator would allow sworn pleadings to be used as proof in a summary judgment proceeding if the pleadings set out in "great detail" the essential facts and were properly supported by a sworn statement. 462 S.W.2d at 544–45, (citing *Central Bank & Trust Co. v. Davis*, 102 So.2d 600 (Fla.1958), and 6 MOORE'S FEDERAL PRACTICE 2176 (2d. ed. 1960)). We noted that a Texas court of appeals had held to this effect. *Pine v. Gibraltar Sav. Ass'n*, 427 S.W.2d 714, 718 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ). Our Court concluded, however:

On balance, we are convinced that orderly judicial administration will be better served in the long run if we refuse to regard pleadings, even if sworn, as summary judgment evidence.... If we took the opposite course, we would be confronted with constant problems concerning whether there was an adequate showing that the person making oath was personally acquainted with the facts and was competent to testify to the facts alleged.

*Hidalgo,* 462 S.W.2d at 545.

We do not revisit this holding today in light of the fact that the sworn pleadings relied upon by Laidlaw do not otherwise meet the requirements of Rule 166a. TEX. R.CIV.P. 166a. ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") The statements in the petition are conclusory. They do not set forth facts. The sworn statement of one Larry Conwell states only "that he is personally familiar" with the following "facts": "[t]he area proposed for annexation by defendant exceeds the statutory maximum one-half mile limitation," and that the "boundary described by the metes and bounds contained in defendant's proposed ordinance does not close." These conclusory averments would be insufficient even if set out in a separate affidavit. There is no indication that Larry Conwell is competent to testify as to either of these matters. Laidlaw also submitted a sworn statement from one Fran Stall. She verified certain allegations relating to Laidlaw's contention that the City failed to comply with the Open Meetings Act. With one arguable exception (the date of the public hearings), the statements she verified are likewise conclusory, and there has been no showing she is competent to testify to the matters set out in the petition. In the absence of any competent summary judgment evidence, the court of appeals was correct in rendering judgment for the City.

\*    \*    \*    \*    \*    \*

For the reasons set forth herein, the judgment of the court of appeals is affirmed.

GONZALEZ, Justice, joined by CORNYN, Justice, dissenting.

It is undisputed that the City of Wilmer is a Type A general law municipality with less than 5,000 inhabitants. It is also undisputed that the addition of the annexed territory will cause the City to exceed the four square mile surface area limit applicable to its incorporation. *See* TEX.LOC.GOV'T CODE § 5.901(2). The Legislature's obvious intent in placing surface area limitations upon a municipality's incorporation was to limit the amount of territory over which a small number of people could exert control. *See City of Deer Park v. State ex rel. Shell Oil Co.,* 259 S.W.2d 284, 287 (Tex.Civ.App.—Waco 1953), *aff'd on other grounds,* 154 Tex. 174, 275 S.W.2d 77 (1954). Because the Court's holding today contravenes this intent, I dissent.

Admittedly, when sections 5.901 and 43.024 of the Local Government are considered separately, it appears that section 5.901 applies only to incorporations, and section 43.024 applies only to annexations. However, considering the statutes together, in light of their legislative history and that of their predecessor statutes, I cannot agree with the Court's interpretation. I disagree that the Legislature intentionally omitted language from section 43.024 which would restrict a city's annexations to the territorial limitations applicable to its incorporation. The fact that the express limitation in the statute governing annexations by Type B municipalities is not found in the statute for Type A municipalities does not evince an intent that annexations by Type A municipalities have no limits. *See* TEX.LOC.GOV'T CODE §§ 43.024, 43.025.

For one thing, the statutes governing annexations by Type A and Type B municipalities were enacted at different times. The Legislature enacted article 974 of the Revised Civil Statutes (now codified at TEX.LOC. GOV'T CODE § 43.024), which governs Type A municipality annexations, in 1875. Act approved Mar. 15, 1875, 14th Leg., 2d R.S., ch. C, § 155, 1875 Tex.Gen.Laws 113, 156, *reprinted in* 8 H.P.N. GAMMEL, LAWS OF TEXAS 485, 528 (1898). Twenty years later, the Legislature enacted article 971 of the Re-

vised Civil Statutes (now codified at Tex.Loc. Gov't Code § 5.901), which places surface area limitations on general law municipality incorporations. Act of Feb. 28, 1895, 24th Leg., R.S., ch. 16, § 1, 1895 Tex.Gen.Laws 17, 17, *reprinted in* 10 H.P.N. Gammel, Laws of Texas 747, 747 (1898). Consequently, article 974 did not expressly refer to the territorial limitations in article 971 because article 971 did not exist when the Legislature enacted article 974. However, article 1135 of the Revised Civil Statutes (now codified at Tex. Loc.Gov't Code § 43.025), the statute which applies to Type B municipality annexations and which expressly refers to article 971's territorial limits on incorporation, was enacted in 1903, eight years after the enactment of article 971. Act approved Mar. 31, 1903, 28th Leg., R.S., ch. LXXXIX, § 1, 1904 Tex. Gen.Laws 116, 116. Thus, it cannot be inferred from the express reference to size limitations in article 1135, and the lack of any reference in article 974, that the Legislature intended not to impose article 971's size limitations upon Type A municipalities. *See City of Northlake v. East Justin Joint Venture,* 873 S.W.2d 413, 419 (Tex.App.—Fort Worth 1994, writ denied).

The strongest argument that the Legislature intentionally omitted language from a statute is when the statute including the disputed language was enacted earlier in time. The enactment of a statute including certain language *after* the enactment of a statute which does not include the language is at best an ambiguous indication of the Legislature's intent. The Legislature's lack of cross-references in article 974 and its express incorporation of article 971's restrictions in article 1135 is more indicative of the relative timing of the statutes' enactments than of legislative intent. *See City of Northlake,* 873 S.W.2d at 419.

I find persuasive the court's analysis in *City of Deer Park.* In that case, the City of Deer Park attempted to convert from a Type B municipality to a Type A municipality and to annex territory belonging to Shell Oil Company. *City of Deer Park,* 259 S.W.2d at 285–86. The court held that Deer Park's attempt to convert to a Type A municipality was void. *Id.* at 286. Moreover, because

Deer Park was still a Type B municipality, article 1135 (now Tex.Loc.Gov't Code § 43.025) governed the annexation and rendered it void. *City of Deer Park,* 259 S.W.2d at 287. The court went on to note, however, that even if the city had successfully converted to a Type A municipality, the annexation would have been void under article 974 (now Tex.Loc.Gov't Code § 43.024) because it would have caused the city to exceed the surface area limits of article 971 (now Tex. Loc.Gov't Code § 5.901). *City of Deer Park,* 259 S.W.2d at 287; *accord City of Northlake,* 873 S.W.2d at 419. The *Deer Park* court stated:

> [I]t is quite clear to us that the intended purpose and legal effect of Art. 971 [now Tex.Loc.Gov't Code § 5.901] was to prohibit any city or town in this State from thereafter including within its corporate limits a superficial area [exceeding the area limits of section 5.901]. *If such was not the intended purpose and effect of such legislation and if any city or town, after its original incorporation, can continue by successive annexations to increase its superficial area indefinitely without regard to the number of its inhabitants, then the enactment ... was vain, futile and meaningless.*

259 S.W.2d at 287 (emphasis added). Allowing a municipality to circumvent the requirements of section 5.901 through subsequent annexations frustrates section 5.901's purpose and renders it a nullity. Under the Court's interpretation of sections 5.901 and 43.024, a municipality, even if it was not growing in population, could gradually expand its boundaries to encompass an unlimited surface area.

Furthermore, the Court errs in failing to give effect to the *Deer Park* construction of sections 5.901 and 43.024 when determining legislative intent. *See Coastal Indus. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.,* 563 S.W.2d 916, 918 (Tex.1978); *Moss v. Gibbs,* 370 S.W.2d 452, 458 (Tex.1963); *Rail v. Morriss,* 95 S.W.2d 738, 739 (Tex.Civ.App.—San Antonio 1936, writ ref'd). If a judicial interpretation of a statute is "unacceptable to the Legislature, a simple remedy is available by the process of

legislative amendment." *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968). When the Legislature re-enacts a statute without substantive change, "it is presumed that the [L]egislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction." *Coastal,* 563 S.W.2d at 918. *Deer Park* was decided in 1953, more than forty years ago. Since that time, the Legislature has convened numerous times, has enacted the Municipal Annexation Act [1] (currently codified in chapters 42 and 43 of the Local Government Code; formerly Tex.Rev.Civ.Stat. art. 970a), and has codified the statutes in the Local Government Code.[2] In all that time, however, the Legislature has not amended section 43.024. By holding that section 5.901 does not apply to annexations by a Type A municipality, the Court today accomplishes by judicial decision something which is more appropriately a policy decision for the Legislature. *Moss,* 370 S.W.2d at 458.

A Type A municipality should not be able to exceed the surface area limits applicable to its original incorporation through subsequent annexations. Because the addition of the annexed territory will cause the City of Wilmer to exceed the four square mile size limit applicable to its incorporation, I would reverse the judgment of the court of appeals and render judgment that the challenged annexation ordinances are void.

---

1. The Legislature enacted the Municipal Annexation Act in 1963, in large part to curb the virtually unlimited power of home rule municipalities to unilaterally annex territory. Texas Legislative Council, Municipal Annexation: A Report to the 57th Legislature, No. 56–6, at 4 (Dec. 1960). The then-current limitations on annexations by general law municipalities were viewed as sufficient to prevent any potential abuse in their annexation practices. *Id.*

2. When the Legislature codified these statutes in 1987, it did not add references in section 43.024 to the territorial limits of section 5.901 because the codification was not intended as a substantive change to the statutes. *See* Tex.Loc.Gov't Code § 1.001(a) (stating that the Local Government Code was enacted as a part of the state's statutory revision program which "contemplates a topic-by-topic revision of the state's general and permanent statute law *without substantive change*" (emphasis added)).