# NO. 12-08-00081-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***THE STATE OF TEXAS FOR*** | *§* | ***APPEAL FROM THE*** |
| ***THE BEST INTEREST AND*** | *§* | ***COUNTY COURT AT LAW*** |
| ***PROTECTION OF B.L.*** | *§* | ***CHEROKEE COUNTY, TEXAS*** |

### *MEMORANDUM OPINION*

Appellant B.L. appeals from an order authorizing the Texas Department of State Health Services (the "Department") to administer psychoactive medication-forensic. In one issue, B.L. asserts the evidence is legally and factually insufficient to support the trial court's order. We reverse and render.

### BACKGROUND

On January 29, 2008, Dr. Satyajeet Lahiri signed an application for an order to administer psychoactive medication-forensic to B.L. In the application, Lahiri stated that B.L. was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. Lahiri stated that B.L. had been diagnosed with schizoaffective disorder and requested the trial court to compel B.L. to take five psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, two antipsychotics, and a mood stabilizer. According to Lahiri, B.L. refused to take the medications voluntarily and, in his opinion, B.L. lacked the capacity to make a decision regarding administration of psychoactive medications because he was acutely psychotic.

Lahiri concluded that these medications were the proper course of treatment for B.L. and that,

if he were treated with the medications, his prognosis would be fair with "chances of competency being restored." Lahiri believed that, if B.L. were not administered the medications, the consequences would be poor. Lahiri considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and B.L.'s best interest. Lahiri also considered less intrusive treatments likely to secure B.L.'s agreement to take psychoactive medication.

On February 1, the trial court held a hearing on the application. Dr. Larry Hawkins testified that he was B.L.'s treating physician and that B.L. was currently under a Chapter 46B order, incompetency to stand trial, for inpatient mental health services. He stated that B.L. had verbally, or otherwise, refused to accept medication voluntarily. According to Hawkins, he believed that B.L. lacked the capacity to make a decision regarding the administration of psychoactive medication. He also stated that he reviewed the application for an order to administer psychoactive medication-forensic completed by Lahiri and agreed with all the statements contained in the application. Hawkins also agreed with Lahiri's diagnosis of schizoaffective disorder, and reviewed the attachment to the application setting forth the classifications of medications that Lahiri wished to access. He testified that treatment with these medications was the proper course of treatment for B.L. and was in his best interest. Hawkins stated that if these medications were used, B.L. would benefit and that these benefits outweighed the risks. Further, he stated that B.L.'s hospitalization would likely be shortened if these medications were used. He believed that the underlying charge against B.L. was burglary of a habitation, a felony.

Hawkins testified that B.L. refused to take psychoactive medications, stating that he would not take any medications and did not believe he needed medications. According to Hawkins, B.L. had been on medications during a prior hospitalization, became competent to stand trial, was returned to jail, stopped taking his medications, was found incompetent to stand trial, and returned to the hospital. He stated that if B.L. was administered these medications, he would improve. However, Hawkins stated that if B.L. did not take these medications, he would be incompetent to stand trial.

B.L. testified that he was a veteran, having served in the United States Army from 1963 to

1970 in Vietnam and South Korea. He stated that he did not have schizophrenia because he did not suffer from flashbacks. In the past, according to B.L., he told a Dr. Brown in the psychiatric ward of a hospital that he was tired of being constipated and blacking out. He stated that, at that time, he was buying pickup trucks for other people, driving the pickups, and "blacking out" when he was taking psychotropic medicines. He stated that there was nothing wrong with him, but he was "forced" to take Thorazine in a state hospital in Vernon, Texas. B.L. agreed that the Hospital was trying to help him, but that he was not taking psychotropic drugs. He testified that he was competent, did not need help, and was "all right." According to B.L., he could sleep without drugs, and had not been in any fights. He stated that when he was "at Nueces," he did not take any medications except for Rinodyne for his hiatal hernia. B.L. testified that he took Zantac, was given Protonix, was in "good shape," and that "that's all it takes."

At the close of the evidence, the trial court granted the application. On February 1, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medication was in B.L.'s best interest and that B.L. lacked the capacity to make a decision regarding administration of the medication. The trial court authorized the Department to administer to B.L. psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, B.L. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensics. More specifically, B.L. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication and that treatment with the proposed medications was in his best interest.

## Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a

3

reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

**Order to Administer Psychoactive Medication**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (Vernon Supp. 2008). The court may issue an order if it finds, by clear and convincing evidence, that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (Vernon 2003). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive

medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, and (6) alternatives to treatment with psychoactive medication.  TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (Vernon Supp. 2008).

**Analysis**

In the application, Lahiri stated that he believed B.L. lacked the capacity to make a decision regarding administration of psychoactive medications because he was acutely psychotic.  He determined that if B.L. were not administered these medications, the consequences would be poor. He also believed the benefits of the psychoactive medications were in B.L.'s best interest.  At the hearing, Hawkins stated that B.L. refused to accept medication voluntarily.  According to Hawkins, B.L. refused to take psychoactive medications because he did not believe he needed these medications. B.L. testified that he refused to take psychotropic drugs because he suffered from constipation and "black outs."  Hawkins testified that treatment with the medications listed in the exhibit attached to the application was the proper course of treatment for B.L. and in his best interest. Further, he stated that if these medications were used, B.L. would benefit and that these benefits outweighed the risks.  Hawkins testified that if B.L. did not take these medications, he would be incompetent to stand trial.  Although Hawkins stated that B.L. lacked the capacity to make a decision regarding the administration of psychoactive medication, he did not explain why B.L. lacked such capacity.

We note that nothing in the Texas Health and Safety Code regarding court ordered administration of psychoactive medication authorizes a trial court to base its findings solely on the physician's application.  *See* TEX. HEALTH & SAFETY CODE ANN. § 574.101-.110 (Vernon 2003 & Supp. 2008).  Pleadings, such as the physician's application here, are not evidence that the statutory standard has been met.  *See id.* § 574.031 (Vernon 2003) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); *In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.–San Antonio 2004, no pet.); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn or verified).  Here, there was no

5

evidence from Hawkins at the hearing regarding why B.L. lacked the capacity to make a decision regarding administration of psychoactive medications. *See In re E.G.*, 249 S.W.3d 728, 731-32 (Tex. App.–Tyler 2008, no pet.). A conclusory statement by Lahiri in the application, without any testimony or explanation from Hawkins at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See Addington*, 588 S.W.2d at 570.

Thus, considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could not have formed a firm belief or conviction that B.L. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications were in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *In re J.F.C.*, 96 S.W.3d at 266. Consequently, the evidence is legally insufficient to support the trial court's findings based upon section 574.106 of the Texas Health & Safety Code. Having determined that the evidence is legally insufficient, it is unnecessary for us to address B.L.'s argument that the evidence is factually insufficient to support the trial court's findings. *See* TEX. R. APP. P. 47.1. We sustain B.L.'s sole issue.

## CONCLUSION

Based upon our review of the record, we conclude that the evidence is legally insufficient to support the trial court's order authorizing the administration of psychoactive medication-forensic. Therefore, we *reverse* the trial court's order authorizing the administration of psychoactive medication-forensic and *render* judgment denying the State's application for an order to administer psychoactive medication-forensic.

                        **JAMES T. WORTHEN**
                                Chief Justice

Opinion delivered September 3, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.,*

(PUBLISH)