

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00087-CV

BARRY WOOD, JR.                                                      APPELLANT

V.

MERRILL WELLS, VOA FACILITY                                          APPELLEES
DIRECTOR, FT. WORTH AND
VOLUNTEERS OF AMERICA, TX
INC.

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

On the court's own motion, we withdraw the opinion and judgment dated October 13, 2011, and substitute the following.

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

Appellant Barry Wood, Jr. appeals the trial court's summary judgment in favor of Appellees Merrill Wells, VOA Facility Director, Ft. Worth and Volunteers of America, TX Inc. (VOA). We will affirm.

# II. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, a federal court convicted Wood of false statement in passport application and sentenced him to twenty-seven months' confinement and a period of supervision. Wood served part of his sentence at the Bureau of Prisons's (BOP) Federal Correctional Complex (FCC) in Beaumont, Texas. In March 2009, the FCC sent a referral to Lola Lee Brown, a Community Corrections Manager (CCM) for the BOP, indicating that Wood would soon be eligible for an early release and placement in a Residential Reentry Center (RRC).

Several months later, the FCC approved Wood's application for a furlough to travel by town driver, bus, and taxi, without an escort, to Fort Worth, Texas, to serve the remaining portion of his sentence at an RRC operated by the VOA. Wood's predetermined travel itinerary indicated that a town driver would depart the FCC with Wood on September 4, 2009, at 10:30 a.m. and drive him to the Greyhound Bus Station. Wood's bus was scheduled to leave Beaumont at 11:30 a.m. for Fort Worth.[2] Wood's anticipated arrival in Fort Worth was 10:30 p.m. on

---

[2]Wood's Greyhound travel itinerary included four layovers, one of which was three-and-a-half hours long.

2

September 4, 2009. He was then scheduled to take a taxi to the RRC, where he was scheduled to arrive no later than 11:30 p.m. that night.

According to Wood, his initial 11:30 a.m. departure from Beaumont was delayed to 12:30 p.m. However, that bus was oversold, so Wood was bumped to a 1:00 p.m. departure bus that did not arrive in Houston until 2:15 p.m. He therefore missed his originally scheduled 1:45 p.m. departure from Houston, so Greyhound rescheduled him for the 5:00 p.m. bus. Wood was bumped again and did not depart Houston until 6:15 p.m. He arrived in Dallas at 11:50 p.m., departed Dallas on the 12:15 a.m. bus, and arrived in Fort Worth at 1:00 a.m. He then rode by taxi to the RRC, where he arrived after 1:00 a.m., nearly two hours past his anticipated arrival.

The conditions of Wood's furlough, which he signed, stated, "I agree to contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness." Wood apparently attempted to notify the VOA of his delay, but because the call was long distance and transferees are not authorized to carry cell phones, Wood called the VOA collect. His call was met by a recording that was unable to accept the long distance charges. Wood therefore placed a collect call to his mother, Rojeane Wood, who accepted his call and agreed to notify the VOA of his delay.

Rojeane called the VOA at 4:30 p.m. on September 4, 2009, to inform it of the delay and Wood's attempted collect call. The VOA staff told Rojeane to call the home institution, the FCC, instead. Rojeane therefore phoned the FCC to tell

3

them that Wood would be arriving late to the VOA due to bus delays beyond his control. The FCC informed Rojeane that she needed to call the VOA, so she called the VOA again and left a message with a monitor. She stated what the FCC had told her and that Wood would be late due to bus delays.

At 12:55 a.m. on September 5, 2009, Felicia Jackson, a VOA employee, prepared an incident report citing Wood for violating conditions of his furlough because his anticipated time of arrival had passed but he was still not present at the VOA. The report did not mention any conversation with Wood's mother regarding the delay. Jackson called the FCC at 12:19 a.m., and an officer told her that Wood had left the FCC the previous morning. Her report did not indicate that the FCC officer had mentioned receiving a phone call from Wood's mother, although Wells, the VOA's facility director, contended that Jackson had been informed of Wood's delay.

Wood met with Wells the following Tuesday to discuss the late arrival. Wood explained the bus delays and gave Wells a handwritten document that outlined the chronology of events from September 4, 2009. Wells understood Wood when he explained that both the FCC and the VOA had been alerted that Wood would be arriving late, and Wells later admitted that Wood had informed him that he was bumped from the bus departing from Beaumont, but Wells denied that Wood had told him that he was bumped from the bus departing from Houston.

4

Wells did not conduct an investigation before contacting his superior, Lola Brown, Community Corrections Manager (CCM), about the incident because Wood said that he had taken another bus without contacting the FCC or the VOA, in violation of his furlough. Wells told Brown that Wood had given up his seat on the bus that he was scheduled to take. Based on discussions with Wells and an FCC staff member, Brown made the administrative decision to have Wood incarcerated for thirty days in the Mansfield City Jail pending a determination of his suitability for RRC placement. Wood subsequently appealed to the BOP and filed grievances with the Texas Department of State Health Services and Brown. In his appeal to the BOP, Wood complained that the VOA staff did not relay to the staff working the next shift that he would be delayed in arriving to the VOA. He also claimed that Wells violated the code of federal regulations by denying him a hearing regarding the late arrival. In her response to Wood's grievance, Brown stated that Wood's due process rights were not violated when he did not receive a hearing because her decision to transfer him to the Mansfield City Jail was an administrative, not a disciplinary, decision made by her.

Wood sued Wells and the VOA, alleging claims against Wells for breach of fiduciary duty and gross negligence and a claim against the VOA for negligence based on Wells's acts or omissions. Wood specifically complained that the VOA was liable "for its staff member[s'] negligence in failing to relay critical information about [his] delay" and that Wells was grossly negligent for "omitting exculpatory

evidence favoring [Wood] in his representation to the CCM." Wood sought economic damages from loss of potential employment; damages resulting from emotional pain, suffering, and mental anguish; and exemplary damages for Wells's alleged intentional and malicious conduct. The VOA and Wells filed no-evidence and traditional motions for summary judgment on Wood's claims. Wood responded to the motions and attached as evidence two affidavits (one by Rojeane and one by Jonathan Baumgardner) and his referral for RRC placement. The trial court granted Appellees' motions, and this appeal followed.

### III. STANDARD OF REVIEW

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of

6

material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, as is the case here, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins.*

7

*Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## IV. BREACH OF FIDUCIARY DUTY

In his first issue, Wood argues that the trial court erred by granting Wells's no-evidence motion for summary judgment on Wood's breach of fiduciary duty claim because a genuine fact issue exists that a fiduciary relationship existed between himself and Wells.

As this court has explained,

Due to its extraordinary nature, the law does not recognize a fiduciary relationship lightly. Therefore, whether such a duty exists depends on the circumstances.

Fiduciary duties may arise from formal and informal relationships and may be created by contract. . . . A person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as personal friendship. *Thus, the relationship must exist prior to and apart from the agreement that is the basis of the suit*.

*Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex. App.—Fort Worth 2010, no pet.) (citing *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied)); *cf. Berry v. First Nat'l Bank of Olney*, 894 S.W.2d 558, 560 (Tex. App.—Fort Worth 1995, no writ) (holding that bank did not automatically have a fiduciary relationship with its customers and that the customers therefore had the burden to respond to the bank's summary judgment motion by providing evidence of specific facts showing a special relationship).

8

Here, although Wells was required under contract to follow certain guidelines with respect to the VOA's clients, the record contains no evidence that Wood and Wells had any type of relationship prior to Wood's arrival at the VOA. Most importantly, Wood's summary judgment evidence—Rojean's affidavit, Baumgardner's affidavit, and the RRC placement referral—does not address any matter regarding a fiduciary relationship between Wood and Wells. Therefore, because Wood failed to produce more than a scintilla of evidence raising a genuine issue of material fact that Wells owed Wood a fiduciary duty, we hold that the trial court did not err by granting Wells's no-evidence motion for summary judgment on Wood's breach of fiduciary duty claim. We overrule Wood's first issue. Having overruled Wood's first issue, we need not address his second issue arguing that he raised a fact issue that Wells breached his fiduciary duty to Wood. *See* Tex. R. App. P. 47.1.

## V. NEGLIGENCE AND GROSS NEGLIGENCE

In his third issue, Wood argues that the trial court erred by granting Appellees' no-evidence motion for summary judgment on his negligence claim. Among other grounds, Appellees moved for summary judgment on the damages element of Wood's negligence claim.

The common law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Foster v. Denton ISD*, 73

9

S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.). A finding of ordinary negligence is a prerequisite to a finding of gross negligence.[3] *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 202 n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied).

As with the issue above, Wood's summary judgment evidence consists of only (1) his mother's affidavit detailing her attempts to notify the VOA and the FCC that Wood was running late on September 4, 2009; (2) Baumgardner's affidavit stating that he did not experience any "negative consequences" when he arrived late to the VOA; and (3) the RRC placement referral. These documents contain no evidence raising a genuine fact issue that Wells (and the VOA based on respondeat superior) proximately caused Wood damages.

In his brief, Wood references other portions of the record to support his argument, but pleadings do not constitute summary judgment evidence. *See Nicholson v. Mem'l Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The focus of a no-evidence summary judgment is shifted from the pleadings to the actual evidence or proof to assess whether there is a genuine need for a trial. *LaGoye v. Victoria Wood Condo. Ass'n*, 112

---

[3]Gross negligence involves two additional components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231 (Tex. 2004).

S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Both a motion for summary judgment and a response to a motion for summary judgment are pleadings. *Nicholson*, 722 S.W.2d at 749. To the extent that Wood relies on facts mentioned in any pleadings to raise a fact issue, those facts do not constitute summary judgment evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Strachan v. FIA Card Servs.*, No. 14-09-01004-CV, 2011 WL 794958, at *3 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, pet. filed) (mem. op.); *Solano v. Landamerica Commonwealth Title of Fort Worth, Inc.*, No. 02-07-00152-CV, 2008 WL 5115294, at *11 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (mem. op.); *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

In his brief, Wood also directs us to evidence that Appellees attached to their traditional motion for summary judgment (CR 233: 42:4) to show that a genuine fact issue was raised as to damages. Appellees made it abundantly clear that the evidence attached to their traditional motion for summary judgment was for purposes of demonstrating their entitlement to summary judgment on traditional grounds, and they did not attach any evidence to their no-evidence motion for summary judgment. This is permissible summary judgment practice. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004) ("The fact that evidence may be attached to a motion that proceeds under subsection (a) or (b) does not foreclose a party from also asserting that there is no evidence with regard to a particular element."). Further, although Wood filed a response, in the portion of

11

his response addressing damages, he did not direct the trial court to any evidence attached to Appellees' traditional motion for summary judgment or point out the existence of any fact issues regarding damages raised by that evidence. *See Viasana v. Ward Cnty.*, 296 S.W.3d 652, 655 (Tex. App.—El Paso 2009, no pet.) (reasoning that it was inappropriate to consider evidence attached to traditional motion for summary judgment in connection with review of no-evidence motion because nonmovant did not file response referencing evidence attached to traditional motion for summary judgment). Consequently, the only evidence that we may consider in this no-evidence analysis consists of the three documents that Wood attached to his summary judgment response—his mother's affidavit, Baumgardner's affidavit, and the RRC placement referral.

We hold that the trial court did not err by granting Appellees' no-evidence motion for summary judgment on Wood's negligence and gross negligence claims. We overrule Wood's third issue.

## VI. CONCLUSION

Having overruled all three of Wood's issues, we affirm the trial court's order granting Appellees' motions for summary judgment.

BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: November 10, 2011