**Petition for Writ of Mandamus Conditionally Granted; Memorandum Opinion filed July 18, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-23-00950-CV

---

### IN RE REGENCY IHS OF BRENHAM, LLC, Relator

---

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
335th District Court
Washington County, Texas
Trial Court Cause No. 37765**

---

### MEMORANDUM OPINION

On December 19, 2023, Relator Regency IHS of Brenham, LLC, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, Relator ask this Court to compel the Honorable Carson Campbell, presiding judge of the 21st Judicial District Court of Washington County[1], to vacate the Order on Plaintiff's Motion for Court to

---

[1] Honorable Carson Campbell was the sitting judge for this proceeding.

Establish Plaintiffs' Standard of Proof signed October 19, 2023. We conditionally grant the petition.

**BACKGROUND**

This original proceeding arises from a health care liability lawsuit. Glenn Earl Kokemor ("Kokemor"), individually and on behalf of the estate of Dolores Fay Kokemor, sued relator, asserting that relator failed to provide care to Dolores Fay Kokemor, that would have allegedly prevented her from being exposed to, contracting, and ultimately dying of Covid-19 complications.

## 1. The Texas Pandemic Liability Protection Act

On June 14, 2021, Governor Abbot signed into law the PLPA, which protects entities and health care providers from liability for injuries or death related to pandemic diseases such as COVID-19. *See* Tex. Civ. Prac. Rem. Code § 74.155. Section 74.155 states:

> (b) Except in a case of reckless conduct or intentional, willful, or wanton misconduct, a physician, health care provider, or first responder is not liable for an injury, including economic and noneconomic damages, or death arising from care, treatment, or failure to provide care or treatment relating to or impacted by a pandemic disease or a disaster declaration related to a pandemic disease if the physician, health care provider, or first responder proves by a preponderance of the evidence that:
>
> > (1) a pandemic disease or disaster declaration related to a pandemic disease was a producing cause of the care, treatment, or failure to provide care or treatment that allegedly caused the injury or death; or
> >
> > (2) the individual who suffered injury or death was diagnosed or reasonably suspected to be infected

2

with a pandemic disease at the time of the care, treatment, or failure to provide care or treatment.

TEX. CIV. PRAC. & REM. CODE § 74.155(b).

(d)     Care, treatment, or failure to provide care or treatment relating to or impacted by a pandemic disease or a disaster declaration related to a pandemic disease under Subsection (b) includes:

(1) screening, assessing, diagnosing, or treating an individual who is infected or suspected of being infected with a pandemic disease;

(2) prescribing, administering, or dispensing a drug or medicine for off-label or investigational use to treat an individual who is infected or suspected of being infected with a pandemic disease;

(3) diagnosing or treating an individual who is infected or suspected of being infected with a pandemic disease outside the normal area of the physician's or provider's specialty, if any;

(4) delaying or canceling nonurgent or elective medical, surgical, or dental procedures;

(5) delaying, canceling, or not accepting in-person appointments for office or clinical visits, diagnostic tests, scheduled treatment, physical or occupational therapy, or any other diagnosis or treatment of an illness or condition not related to a pandemic disease;

(6) using medical devices, equipment, or supplies outside of their normal use, including using or modifying such devices, equipment, or supplies for an unapproved use, to treat an individual

3

who is infected or suspected of being infected with a pandemic disease;

(7) conducting tests on or providing treatment to an individual who is infected or suspected of being infected with a pandemic disease outside the premises of a health care facility;

(8) acts or omissions caused by a lack of personnel or staffing, facilities, medical devices, supplies, or other resources attributable to a pandemic disease that renders a physician, health care provider, or first responder unable to provide the same level or manner of care to any individual that otherwise would have been acquired in the absence of the disease; and

(9) acts or omissions arising from the use or nonuse of personal protective equipment.

TEX. CIV. PRAC. & REM. CODE § 74.155(d).

(g) A physician, health care provider, or first responder who intends to raise a defense under Subsection (b) must provide to a claimant specific facts that support an assertion under Subsection (b)(1) or (2) not later than the later of:

(1) the 60th day after the date the claimant serves an expert report on the physician, health care provider, or first responder under Section 74.351; or

(2) the 120th day after the date the physician, health care provider, or first responder files an original answer in the suit.

TEX. CIV. PRAC. & REM. CODE § 74.155(g).

4

## 2. Kokemor's Motion for Court to Establish Plaintiff's Standard of Proof.

On March 11, 2022, relator filed their original answer stating "Defendants assert any claims related to the alleged exposure and contraction of COVID-19 are barred pursuant to Tex. Civ. Prac. & Rem. Code 74.155". On May 15, 2023, Kokemor filed a motion to strike defendants' affirmative defense. Relator filed their first amended answer on May 25, 2023, asserting the following:

> Defendant asserts that any claims related to the alleged exposure and contraction of COVID-19 are barred pursuant to Tex. Civ. Prac. & Rem. Code 74.155. Answering further and restating Plaintiff's Petition filed on February 8, 2022, "Mrs. Kokemor was 87-years-old when she was admitted to Brenham Nursing and Rehab on December 19, 2016. She was admitted for long-term care and management of her chronic health conditions. Her diagnosis included Congestive Heart Failure, Chronic Respiratory Failure with Hypoxia, Chronic Kidney Disease, Vascular Dementia, Hypertension, Anemia, Anxiety, Arthritis, Restless Leg Syndrome, Major Depressive Disorder, Gastro-Esophageal Reflux Disease and Chronic Back Pain." *(Plaintiff's Petition Paragraph 63).* "On April 8, 2020, Mrs. Kokemor's care plan was updated. It stated she was at risk for deterioration of her medical condition due to positive results of COVID-19." *(Plaintiff's Petition Paragraph 86).* On April 13, 2020, Mrs. Kokemor was lying in bed with her head slumped forward and was difficult to arouse." "The Nurse Practitioner documented that Mrs. Kokemor had a lower respiratory infection due to COVID - 19 and a worsening oxygen saturation level." *(Plaintiff's Petition Paragraph 90).* "On April 25, 2020, Mrs. Kokemor was unresponsive to verbal stimuli and chest rub." "She died the next day, April 26, 2020." *(Plaintiff's Petition Paragraph 92).* Mrs. Kokemor was diagnosed or reasonably suspected of being infected with COVID-

5

19. [Tex. Civ. Prac. & Rem. Code 74.155(b)(1)]. Defendant would also show that Tex. Civ. Prac. & Rem. Code 74.155(d) defines care, treatment, or failure to provide care or treat to include the following:

(1) assessing, diagnosing, or treating an individual who is infected or suspected of being infected with a pandemic disease;

(2) prescribing, administering, or dispensing a drug or medicine for off-label or investigational use to treat an individual who is infected or suspected of being infected with a pandemic disease;

(3) diagnosing or treating an individual who is infected or suspected of being infected with a pandemic disease outside the normal area of the physician's or provider's specialty, if any;

(4) delaying or canceling nonurgent or elective medical, surgical, or dental procedures;

(5) delaying, canceling, or not accepting in-person appointments for office or clinical visits, diagnostic tests, scheduled treatment, physical or occupational therapy, or any other diagnosis or treatment of an illness or condition not related to a pandemic disease;

(6) using medical devices, equipment, or supplies outside of their normal use, including using or modifying such devices, equipment, or supplies for an unapproved use, to treat an individual who is infected or suspected of being infected with a pandemic disease;

(7) conducting tests on or providing treatment to an individual who is infected or suspected of being infected with a pandemic disease outside the premises of a health care facility;

6

(8) acts or omissions caused by a lack of personnel or staffing, facilities, medical devices, supplies, or other resources attributable to a pandemic disease that renders a physician, health care provider, or first responder unable to provide the same level or manner of care to any individual that otherwise would have been acquired in the absence of the disease; and

(9) acts or omissions arising from the use or nonuse of personal protective equipment.

Tex. Civ. Prac. & Rem. Code 74.155(d)(1), (2), (3), (8), and (9) are applicable areas of care and treatment of Mr. Kokemor which are included as an Affirmative Defense as indicated in the medical records, and as stated in Plaintiff's Original Petition. Defendant also request that the Court take judicial notice of Plaintiffs Petition and the admissions therein, which are properly used against Plaintiff. See Fisher v. First Chapel Dev. LLC, No. 14-19-00111-CV, 2021 Tex. App. LEXIS 4187, at *13 (Tex. App.-Houston [14th Dist.] May 27, 2021, no pet. h.) ("When clear and unequivocal, admissions in live pleadings are regarded as judicial admissions in the case in which the pleadings are filed; accordingly, the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary in that case."). Defendant asserts the application of section 74.155 of the Texas Civil Practice and Remedies Code, which provides that a health care provider is not liable for any claims where "a pandemic disease or disaster declaration related to a pandemic disease was a producing cause of the care, treatment, or failure to provide care or treatment that allegedly caused the injury or death" or (2) "the individual who suffered injury or death was diagnosed or reasonably suspected to be infected with a pandemic disease at the time of the care, treatment, or failure to provide care or treatment." Defendant's Original Answer, at p. 2; Tex. Civ. Prac. & Rem. Code §

74.155(b). COVID-19 was a direct cause of Mr. Kokemor's death. This is undisputed. All Plaintiff's claims in her medical malpractice case arise from allegations that Defendant failed to provide care to Ms. Kokemor that would have allegedly prevented her from being exposed to, contracting, and ultimately dying from COVID-19.

Kokemor filed a motion for the court to establish plaintiff's standard of proof, and on October 17, 2023, the court held a hearing on the Kokemor's motion. During the hearing, Kokemor argued that relator failed to provide the necessary "specific facts" by the deadline set forth in Section 74.155(g), and as a result they are entitled to sue relator under the ordinary negligence standard. In response, relator argued: (1) that the original answer was sufficient, (2) subsection (g)'s deadline was directory and does not support striking relator's defense, and (3) the requested relief mixes the burden of proof with Kokemor's causes of action. The trial court heard both arguments and granted Kokemor's motion. The order specifically stated "the burden of proof applicable to Plaintiff's claims throughout this case will be preponderance of the evidence".

## MANDAMUS STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per

curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Cap. Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The relator must establish that the trial court could reasonably have reached only one decision. *Id.*

Relator also must demonstrate that it does not have an adequate remedy at law, such as a remedy by an appeal. *See In re J.B. Hunt Transp.*, 492 S.W.3d 287, 299 (Tex. 2016) (orig. proceeding). The adequacy of appeal as a remedy for an alleged clear abuse of discretion in an interlocutory ruling involves a balance of jurisprudential considerations that "implicate both public and private interests." *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam) (internal quotations omitted); *see also In re Prudential Ins. Co.*, 148 S.W.3d at 136. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *See In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential*

9

*Ins. Co.*, 148 S.W.3d at 136.

1. **Trial Court Abused Its Discretion when it Established the Burden of Proof Applicable to Plaintiff's Claims as Preponderance of the Evidence.**

Section 74.155(b) states a healthcare provider is not liable for injury or death in cases where a pandemic disease was a producing cause of the care, treatment, or failure to provide care or treatment that allegedly caused the injury or death. *See* Tex. Civ. Prac. & Rem. Code § 74.155(b). This protection requires the healthcare provider to allege facts by the later of the 60th day after the date the claimant serves an expert report under Section 74.351, or the 120th day after the date the healthcare provider files an original answer. *See id.* at § 74.155(g).

An expert report required by section 74.351(a) is meant to serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning and (2) to provide a basis for the trial court to conclude that the claim has merit. *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex.2008). In this way, section 74.351 permits the trial court to serve as a "gatekeeper" by determining whether the expert report represents a good faith effort to inform of the conduct called into question and permit the court to conclude whether the claim has merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002); *Mettauer v. Noble*, 326 S.W.3d 685, 691 (Tex.App.—Houston [1st Dist.] 2010, no pet.). The expert

report requirement "establishes a threshold over which a claimant must proceed to continue a lawsuit." *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). A Chapter 74 expert report is intended to separate potentially meritorious health-care liability claims from frivolous ones. *In re LCS SP, LLC*, 640 S.W.3d 848, 851 (Tex. 2022). The failure to serve a defendant with an expert report within 120 days of the date the defendant files its answer entitles the health-care provider to seek dismissal of the claim and an award of attorney's fees and costs. *Id.*

The legislature made it clear that the failure to provide a compliant expert report under Section 74.351, allows a defendant to seek a dismissal with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Section 74.155 does not provide a similar consequence for the failure to provide "specific facts" entitling a defendant to the gross negligence affirmative defense. In construing a statute, our primary goal is to ascertain and effectuate the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). To ascertain the legislature's intent, we must consider the statute as a whole, and not isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). If the statute's language is unambiguous, its plain meaning will prevail. *McIntyre v.*

11

*Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We may also consider the statute's objectives, the circumstances under which the statute was enacted, legislative history, common law, former law, similar provisions, and the consequences of the statutory construction. *See* Tex. Gov't Code § 311.023(1)-(5). It is a well-settled rule of statutory construction that we must presume that every word of a statute has been used for a purpose. *Laidlaw Waste Sys., Inc. v. Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). Likewise, we must presume that every word excluded from a statute has been excluded for a purpose. *Id.* This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. *Id.* We presume the legislature intentionally excluded a penalizing provision under Section 74.155, therefore establishing the incorrect burden of proof is outside the intention of the statute and was an abuse of discretion.

74.155 is a relatively new statute, and its limitations have not been fully litigated. The United States District Court for the Northern Division of Texas in Dallas recently analyzed the sufficiency of a defendant's pleading in relation to Section 74.155. *See Norman v. Dallas Tex. Healthcare LLC,* No. 3:20-CV-03022-L, 2023 WL 4157485, (N.D. Tex. June 7, 2023), report and recommendation adopted, No. 3:20-CV-3022-L, 2023 WL 8791183 (N.D. Tex. Dec. 19, 2023). In *Norman*, plaintiff filed a lawsuit against the defendant on August 14, 2020. *Id.* at 2.

12

On October 1, 2020, defendants filed their answer denying all claims and removed the case to federal court on the basis of diversity jurisdiction. *Id*. Approximately ten months later, on June 14, 2021, the Texas Legislature enacted the PLPA. As a result of the new legislation, the defendants sought leave to amend their answer to assert the new defenses under Section 74.155 of the PLPA. *Id*. After leave was granted, defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Id.*

The Court found that Texas law and Federal Rules of Civil Procedure do not conflict in relation to affirmative defenses, stating that Federal Rule of Civil Procedure 8 requires a party to affirmatively state any avoidance or affirmative defense. *Id*. at 3. The Court reasoned that a defendant must plead an affirmative defense with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced to prevent unfair surprise." *Id*. Further, the Court held that the "Defendants' amended answer includes sufficient specific facts to support their assertion of the affirmative defense." *Id* at 4.

The Court in *Norman* provided sound logic and reasoning. Requiring the healthcare provider to allege facts by a specific deadline is to provide notice to the plaintiff. Relator advised Kokemor that they intended to rely on section 74.155's defense, which provided Kokemor with "sufficient facts" of Relator's intent to pursue this defense. Kokemor received fair notice when Relator included Section

13

74.155(b) in their original answer and then their later amended answer. Kokemor cannot claim to be surprised by relator's section 74.155 defense; it was Kokemor who filed the motion to establish the plaintiff's standard of proof. The hearing to establish the burden of proof was done well in advance of trial. The record does not support a finding that relator's affirmative defense did not provide enough "specific facts" to Kokemor. Because, relator provided specific facts within the statutory deadline, the trial court abused its discretion when it struck relator's gross negligence defense.

## 2. Relator does not have an adequate remedy on appeal.

The operative word, "adequate", has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 36. Mandamus review of significant rulings in exceptional cases may be essential to spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *See id.* "[A]n appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ, but extraordinary relief can be warranted when a trial court subjects taxpayers, defendants, and all of the state's district courts to meaningless proceedings and trials. *See In re Team Rocket, L.P.*, 256

14

S.W.3d 257, 262 (Tex. 2008).

Requiring Relator to proceed under a different standard of proof that is allowed under Section 74.155(b) would subject the court to meaningless proceedings and trials. We conclude that Relator do not have an adequate appellate remedy for the trial court's order establishing Kokemor's claims to procced under preponderance of the evidence.

## CONCLUSION

We conclude that the trial court abused its discretion by granting Kokemor's motion and establishing the burden of proof as preponderance of the evidence and relator does not have an adequate remedy by appeal. Accordingly, we conditionally grant relator's petition for writ of mandamus and direct the trial court to vacate its October 19th, 2023 order on plaintiff's motion for court to establish plaintiff's standard of proof. We are confident the trial court will act in accordance with this opinion and the writ will issue only if the trial court fails to comply.

PER CURIAM

Panel consists of Chief Justice Christopher, and Justices Wise and Jewell.

15