**Affirmed in Part and Reversed in Part and Remanded and Majority and Concurring Opinions filed December 30, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-25-00116-CV

---

**KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF TEXAS, AND THE OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS, Appellants**

**V.**

**DELIA GARZA, IN HER OFFICIAL CAPACITY AS TRAVIS COUNTY ATTORNEY; JOSÉ P. GARZA, IN HIS OFFICIAL CAPACITY AS TRAVIS COUNTY DISTRICT ATTORNEY; TRAVIS COUNTY; JAMES MONTOYA, IN HIS OFFICIAL CAPACITY AS EL PASO COUNTY DISTRICT ATTORNEY; CHRISTINA SANCHEZ, IN HER OFFICIAL CAPACITY AS EL PASO COUNTY ATTORNEY; EL PASO COUNTY; JOHN CREUZOT, IN HIS OFFICIAL CAPACITY AS DALLAS COUNTY CRIMINAL DISTRICT ATTORNEY; DALLAS COUNTY; JOE GONZALES, IN HIS OFFICIAL CAPACITY AS BEXAR COUNTY CRIMINAL DISTRICT ATTORNEY; BEXAR COUNTY; SEAN TEARE, IN HIS OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY; HARRIS COUNTY; BRIAN MIDDLETON, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF FORT BEND COUNTY (268TH JUDICIAL DISTRICT); AND SHAWN W. DICK, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF WILLIAMSON COUNTY, TEXAS (26TH JUDICIAL DISTRICT), Appellees**

**OPINION**

This is an interlocutory appeal of an order that temporarily enjoins enforcement of administrative rules promulgated by the Attorney General. *See* 1 Tex. Admin. Code §§ 56.1–56.10 (the Rules). The Rules require local prosecutors in Texas's most populated counties to prepare and produce reports containing multiple categories of information regarding criminal matters.

This appeal concerns only whether the Attorney General had authority to promulgate the Rules at issue, not whether the Attorney General has authority to obtain information on criminal matters from local district attorneys on an ad hoc basis. We conclude that Appellees established a probable right to relief because Section 41.006 of the Texas Government Code does not confer rulemaking authority on the Attorney General, and that the trial court did not abuse its discretion in finding irreparable harm in the interim. We further conclude that the temporary injunction order should be limited to enjoining the enforcement of the Rules against only the prosecutors who applied for the temporary injunction. Accordingly, we affirm in part and reverse and remand in part.

**BACKGROUND**

Section 41.006 of the Texas Government Code provides

> At the times and in the form that the attorney general directs, the district and county attorneys shall report to the attorney general the information from their districts and counties that the attorney general desires relating to criminal matters and the interests of the state.

Relying solely on this statute, the Attorney General adopted administrative rules that require district and county attorneys presiding in a county with a population of 400,000 or more to provide initial, quarterly, and annual reports. *See* 1 Tex. Admin. Code §§ 56.1, .3, .4. The Rules specify twelve categories of required information for the initial and quarterly reports, including the number of instances certain prosecution events occurred, "case files" for certain categories of cases, and "all correspondence" on certain topics. *Id.* § 56.3(a)–(b). The Rules require five categories of information for the annual reports, including internal policies, operating procedures, and records reflecting the use of funds received through civil asset forfeiture, foundations, or associations under Texas Government Code Section 41.108. *Id.* § 56.4.

The Rules also create an Oversight Advisory Committee, which can issue notices of overdue reports and has the power to request "entire case files based on submitted reports or any other information the Oversight Advisory Committee desires relating to criminal matters and the interests of the state on a case-by-case basis." *Id.* § 56.9(b)–(c). Noncompliance with the Rules is considered "official misconduct" under Section 87.011 of the Local Government Code and permits the Attorney General to file a petition for quo warranto to remove a county or district attorney from office. *Id.* § 56.8(1)–(2). The Attorney General adopted the Rules in March 2025, and they took effect April 2, 2025.

Before the first reporting due date, district and county attorneys from Travis, El Paso, Dallas, Bexar, Harris, Fort Bend, and Williamson counties (Appellees) filed suit seeking declaratory and injunctive relief prohibiting enforcement of the Rules.[1] Appellees challenge the validity of the Rules, arguing that the Attorney General

---

[1] Three groups of district and county attorneys filed suit separately. The cases were consolidated in the trial court.

lacked rulemaking authority to promulgate the Rules under Section 41.006 of the Texas Government Code. Appellees also claim that even if the Attorney General had rulemaking authority, the Rules exceed the scope of Section 41.006, that the Rules were not adopted in substantial compliance with the Administrative Procedure Act (APA), that the Rules are unconstitutional because they violate separation of powers, and that Attorney General Paxton committed *ultra vires* acts by enacting the Rules. The Appellees also applied for a temporary injunction.

At the temporary injunction hearing, Appellees presented two live witnesses and offered twenty-three exhibits without objection by the Attorney General. The Attorney General did not present any evidence at the hearing. After the hearing, the trial court granted the temporary injunction. This interlocutory appeal followed.[2]

## STANDARD OF REVIEW AND APPLICABLE LAW

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

We review a trial court's order granting a temporary injunction for an abuse of discretion. *Abbott v. Anti-Defamation League, Austin, Sw., and Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020). In resolving evidentiary issues, a trial court does not abuse its discretion if some evidence reasonably supports the court's ruling. *Id.* (citing *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017)). The court has no discretion, however, to "incorrectly analyze or apply the law." *Id.* at 916–17 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

---

[2] This Court temporarily stayed the reporting requirements pending resolution of this appeal.

**DISCUSSION**

On appeal, the Attorney General argues (1) Appellees lack a probable right to relief on any of their claims; (2) Appellees suffer no probable, imminent, and irreparable injury in the interim; and (3) the temporary injunction order is overbroad because it extends to nonparties. We address each argument in turn.

**A.      Appellees established a probable right to relief because Section 41.006 does not grant the Attorney General rulemaking authority.**

Appellees established a probable right to relief on their claim that the Rules are invalid because the Attorney General lacked rulemaking authority under Section 41.006. The Attorney General argues Section 41.006 expressly grants rulemaking authority, and even if not express, it impliedly grants the Attorney General rulemaking authority. We disagree. Based on the plain language of Section 41.006, the Legislature did not expressly grant rulemaking authority to the Attorney General, nor can rulemaking power be implied where no such authority is expressly granted.

Administrative agencies are creatures of the Legislature and therefore do not have any inherent authority. *PUC of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). Thus, "[t]he basic rule is that a state administrative agency has only those powers that the Legislature expressly confers upon it." *Id.* at 315. Administrative rulemaking is a lawmaking power that the Legislature delegates to agencies to carry out legislative purposes, so long as the Legislature establishes reasonable standards to guide the agency. *R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992). An agency "can adopt only such rules as are authorized by and consistent with its statutory authority." *Id.* at 685. Although the Attorney General is a constitutionally created officer, TEX. CONST. art. 4, § 1, the Office of the Attorney General is part of the executive branch and therefore has rulemaking authority only if the Legislature grants it such authority.

5

The existence of an agency's rulemaking power cannot be conferred by implication. To be certain, an agency may have "implied powers that are reasonably necessary to carry out [its] *express* responsibilities." *PUC of Tex.*, 53 S.W.3d at 315 (emphasis added). "[W]hen the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers reasonably necessary to fulfill its *express* functions or duties." *Id.* at 316 (emphasis added). In every case in which courts have implied rulemaking power, the Legislature had already granted the agencies express rulemaking power. *See, e.g.*, *Lone Star Gas Co.*, 844 S.W.2d at 685 (Railroad Commission had general rulemaking authority under Section 81.052 of the Texas Natural Resources Code to regulate persons within the oil and gas industry and their operations); *PUC of Tex.*, 53 S.W.3d at 312 (under Section 35.002 of Texas Utility Code, PUC has authority to "adopt rules relating to wholesale transmission service, rates, and access"); *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (bail bond board had authority to adopt rules necessary to implement Bail Bond Act and broad power to "regulate each phase of the bonding business"). Accordingly, whether an agency has implied rulemaking power is analyzed only when deciding whether an agency exceeded the *scope* of its express rulemaking power, not whether the agency has rulemaking power to begin with. "An agency may not . . . exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes." *PUC of Tex.*, 53 S.W.3d at 316 (citing *PUC of Tex. v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995)).

Unlike other agencies, such as the Public Utility Commission or the Railroad Commission, the Legislature did not pass enabling legislation that grants the Office of the Attorney General broad rulemaking power. *Cf.* Tex. Util. Code § 14.002 ("The [Public Utility] commission shall adopt and enforce rules reasonably required

6

in the exercise of its powers and jurisdiction."); Tex. Nat. Res. Code § 81.052 ("The [Railroad] commission may adopt all necessary rules for governing and regulating persons and their operations under the jurisdiction of the commission . . . ."). The Legislature has, however, expressly granted rulemaking authority to the Attorney General in numerous other statutes, as illustrated below, to adopt rules in specific contexts. In each example, the Legislature expressly provided that the Attorney General may "adopt," "prescribe," or "establish" "rules." No similar language is used in Section 41.006.

| Texas Government Code § 41.006 | Examples of Express Grant of Rulemaking Authority to the Attorney General[3] |
|---|---|
| At the times and in the form that the attorney general directs, the district and county attorneys shall report to the attorney general the information from their districts and counties that the attorney general desires relating to criminal matters and the interests of the state. | The Attorney General "**may adopt rules** as necessary to implement and administer" this section relating to the provision of legal services. Tex. Gov't Code § 402.0212(f) (emphasis added) |
| | "The attorney general **may adopt rules** to administer the submission and collection of information under this section." *Id.* § 402.035(f-3) (relating to |

---

[3] The statutes cited in the chart are just a sample. There are many other statutes in which the Legislature granted the Attorney General express rulemaking authority. *See* Tex. Gov't Code § 420.011(a) ("The attorney general may adopt rules . . . ."); *id.* § 420.108 ("The attorney general may adopt rules . . . ."); *id.* § 552.262(a) ("The attorney general shall adopt rules for use by each governmental body . . . ."); *id.* § 552.3031(c) ("The attorney general may adopt rules necessary to implement this section . . . ."); *id.* § 1202.004(e) ("The attorney general may adopt rules . . . ."); *id.* § 2107.002(c) ("the attorney general by rule may establish collection procedures for the agency"); Tex. Code Crim. Proc. art. 56B.460(f) ("The attorney general shall adopt rules . . . ."); *id.* art. 56A.309 ("The attorney general and the department shall each adopt rules as necessary to implement this subchapter."); *id.* art. 58.052(e) ("The attorney general shall adopt rules to administer the program."); *id.* art. 2A.205(e) ("the attorney general shall adopt rules to administer this article"); Tex. Bus. & Com. Code § 102.101(b) ("The attorney general by rule shall prescribe . . . ."); *id.* § 114.0002 ("The attorney general by rule shall . . . ."); *id.* § 303.004 ("The attorney general may adopt rules . . . ."); *id.* § 17.464(d) ("the attorney general may adopt rules"); Tex. Transp. Code § 371.051(g) ("The attorney general by rule shall . . . ."); Tex. Ins. Code § 848.151 ("the attorney general may adopt reasonable rules").

7

| | |
|---|---|
| | collecting information on human trafficking) (emphasis added) |
| | "The attorney general **by rule shall prescribe** the design and content of a sign required to be posted under this section." *Id.* § 402.0351(b) (relating to posting sign containing information on services for human trafficking) (emphasis added) |
| | "The attorney general **by rule shall establish**" guidelines and reporting for the Support Adoption account in accordance with this section. *Id.* § 402.036(e) (emphasis added) |

Because the Legislature has expressly granted rulemaking authority to the Attorney General in numerous other statutes and clearly knows how to expressly grant rulemaking authority when it intends to do so, we cannot conclude Section 41.006 grants express rulemaking authority here. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded."); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[W]e believe every word excluded from a statute must [] be presumed to have been excluded for a purpose").

Although the Attorney General has not cited, nor have we located, any case holding that the term "directs" grants express rulemaking authority, the Attorney General nevertheless argues the term expressly grants rulemaking power, citing

various dictionary definitions.[4]  Appellees provide their own definitions of "direct" to demonstrate the term does not always mean some type of authority.[5]  Appellees further argue "direct" is not a replacement for terms like "adopt" or "rules" that the Legislature routinely uses when it expressly grants rulemaking authority.

We agree with Appellees that "direct" does not confer express *rulemaking* authority here.  To be clear, whether the term "direct" gives the Attorney General the authority to request and receive the information that he "desires" relating to criminal matters from local prosecutors is not the question before us; certainly the word "direct" provides some type of authority, even if not rulemaking authority.  What is before us is whether Section 41.006 clearly and unmistakably delegates express *rulemaking* authority, and we conclude it does not—especially in light of the language used in countless other statutes in which the Legislature did expressly grant rulemaking authority to the Attorney General.

Because Section 41.006 does not grant express rulemaking authority, no such authority can be implied.  The Attorney General primarily relies on *Pruett* to argue rulemaking authority should be implied here.  *Pruett* is inapplicable because that case decided "the *scope* of the [Bail Bond] Board's rule-making authority." *Pruett*, 249 S.W.3d at 452 (emphasis added).  There was no dispute the Board had express rulemaking powers; the question was whether the solicitation rules it adopted fell

---

[4] *See Direct*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 1961) ("direct" means "to prescribe, especially by formal or mandatory instruction or legal enactment," "to regulate the activities or course of," or "to guide and supervise"); *see also Direct*, BLACK'S LAW DICTIONARY (5th ed. 1979) (defining "direct" as "to guide; order; command; instruct"); *Direct*, RANDOM HOUSE COLLEGE DICTIONARY (rev. ed. 1988) (defining "direct" as "to regulate the course of" or "to administer, manage, supervise").

[5] *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 556 (2d Cir. 2016) ("'Direct' can mean 'to manage or guide by advice, helpful information, instruction, etc.'") (quoting RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 558 (2d ed. 2001)); *Direct*, MERRIAM-WEBSTER.COM DICTIONARY ("to show or point out the way for").

within the scope of that express authority. *Id.* Because the Board had authority to "supervise and regulate each phase of the bonding business," the Texas Supreme Court concluded the Board had implied authority to promulgate the solicitation rules even though the Bail Bond Act at the time did not expressly address restrictions on solicitation practices. *Id.* at 453. The Texas Supreme Court explained "[b]y conferring upon an agency the power to make rules and regulations necessary to carry out the purposes of an act, the Legislature forecloses the argument that it intended to spell out the details of regulating an industry." *Id.* (citation modified).

The Legislature did not grant the Attorney General broad authority to promulgate rules, nor did it expressly grant rulemaking power in Section 41.006 and, therefore, none can be implied. Accordingly, we conclude Appellees established a probable right to relief on their claim that the Rules are invalid because the Attorney General lacked rulemaking authority.[6]

## B. Appellees established a probable, imminent, and irreparable injury in the interim.

The last element an applicant is required to plead and prove to obtain a temporary injunction is that the applicant will suffer "a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

There is ample evidence supporting the trial court's findings of probable, imminent, and irreparable harm to Appellees in the interim. The due dates for the

---

[6] Because we conclude the Attorney General did not have rulemaking authority, we need not address whether Appellees established a probable right to recovery on their other claims. *See* Tex. R. App. P. 47.1.

initial and first quarterly report were imminent when Appellees requested relief. Testimony and declarations show a significant amount of staff and attorney time are required to prepare the reports as required under the Rules. For example, the Rules require an initial report containing information of a "reporting event" that has occurred since January 1, 2021. *See* 1 Tex. Admin. Code § 56.3(b). According to testimony Appellees presented to the trial court, preparing this report is a burdensome process, and it is challenging to determine if a case falls under certain categories given how the Rules define terms like "indictment" and "violent crime." For the Travis County Attorney's Office alone, over 10,000 cases are implicated involving at least 130 terabytes of data. The Travis County Assistant Attorney testified attorneys and staff have already spent hundreds of hours preparing the reports. As another example, El Paso County estimates it will take 12,000 hours to comply. Testimony and declarations from the Appellees explain that these efforts to comply with the Rules divert time and resources away from prosecuting crimes.

In addition, Appellees presented evidence that the Rules would require providing privileged and confidential information. For certain types of cases, the Rules require production of "case files." 1 Tex. Admin. Code §§ 56.2(1), 56.3(a)(4)–(7). Case files contain confidential and privileged information protected from disclosure such as privileged communications, attorney work product, grand jury material, victim and witness identities, medical records, and photos depicting sexual assault of minors. Such information is protected from unauthorized disclosure under other state and federal laws that contain both civil and criminal penalties.[7]

---

[7] The Attorney General challenges this finding by arguing Appellees failed to identify which confidentiality laws they would violate if they complied with the Rules. But the record shows the Appellees referenced a nonexhaustive list including: the identity of confidential informants protected under Tex. R. Evid. 508; grand jury information protected under Tex. Code Crim. Proc. art. 20A.201–.205; information collected in connection with pre- and/or post-sentence reports protected under Tex. Code Crim. Proc. art. 42A.251–.259; mental health records and information protected under Tex. R. Evid. 510, Tex. Health & Safety Code §§ 611.001–.005; drug and alcohol

11

Therefore, the local prosecutors are left to evaluate the risk of noncompliance with these privacy laws, the risk of noncompliance with the Rules, and the threat of a quo warranto proceeding to remove them from office. *See* 1 Tex. Admin. Code § 56.8(2). Further, Appellees presented evidence that disclosure of highly sensitive data will discourage people from reporting, investigating, or participating in prosecution of crimes.

The Attorney General argues the balance of equities weighs more in his favor. *See In re State*, 711 S.W.3d 641, 645 (Tex. 2024) ("Another essential consideration attendant on any request for injunctive relief . . . is the injury that will befall either party depending on the court's decision."). Specifically, the Attorney General argues Appellees are acting *ultra vires* by not complying with the Rules and therefore there is automatic harm to the State. *See State v. City of San Marcos*, 714 S.W.3d 224, 245 (Tex. App.—15th Dist. 2025, pet. denied). The Attorney General also argues that Appellees could have asked for exceptions or extensions under the Rules to alleviate any burdens. *See* 1 Tex. Admin. Code §§ 56.3(b)(1), .5(a)(5), .9(d). These arguments assume, however, that the Rules were validly promulgated. As explained above, the Attorney General did not have rulemaking authority.

Because there is some evidence to support the trial court's findings, the trial court did not abuse its discretion in finding probable, imminent, and irreparable harm to Appellees in the interim.

**C.  The relief granted in the temporary injunction should be limited to the plaintiffs.**

The Attorney General argues the temporary injunction is overbroad because

---

treatment records and information protected under 42 C.F.R. § 2.13 and 42 U.S.C.S. § 290dd-2; disclosure of diseases or health conditions protected under Tex. Health & Safety Code §§ 81.046, 81.103; medical records and information protected under the Texas Medical Privacy Act, the Texas Emergency Medical Services Act, and the Health Insurance Portability and Accountability Act ("HIPAA").

it enjoins enforcement of the Rules against anyone subject to them, including nonparties. We agree. In our order granting Appellees' motion for temporary relief to reinstate the temporary injunction, we limited the relief to only the named Appellees. *See* Order at 4 n.1, *Paxton v. Garza*, No. 15–25–00116-CV (Tex. App.—15th Dist., July 17, 2025). Our order relied on *In re Abbott*, which concluded the plain text of Texas Rule of Appellate Procedure 29.3 only allows a court of appeals to issue a temporary stay to "preserve *the parties'* rights" and, therefore, a temporary stay could not reinstate a temporary injunction enjoining enforcement of a rule on a statewide basis. 645 S.W.3d 276, 282–83 (Tex. 2022). Although *In re Abbott* did not decide the scope of a district court's power to temporarily enjoin an administrative rule, *see id.*, the same principles the Texas Supreme Court applied to Rule 29.3 apply to temporary injunctions. *See In re State*, 711 S.W.3d at 645 ("[a] stay pending appeal is, of course, a kind of injunction").

Temporary injunctions are just that—temporary. The purpose of the temporary injunction is to preserve the "status quo" pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The temporary nature of the injunction justifies finding only a probable right to relief, rather than deciding if there is a right to relief for a permanent injunction. And, the party seeking a temporary injunction has to show that imminent, probable, and irreparable harm will occur between the time of the order and trial if not granted. Because there is no proof of a probable, imminent, and irreparable injury in the interim to nonparties, the temporary injunction cannot extend beyond the parties to the case.

Accordingly, we reverse the trial court's temporary injunction order to the extent it enjoins the Attorney General from enforcing the Rules against nonparties.

13

**CONCLUSION**

We affirm the trial court's order granting the temporary injunction as to the named parties, because (1) the Attorney General lacked rulemaking authority to promulgate the Rules and (2) the trial court did not abuse its discretion in finding an imminent, probable, irreparable injury in the interim. We reverse the temporary injunction to the extent it applies to nonparties. We remand for further proceedings consistent with this opinion.

/s/Scott K. Field
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.